ALLEN, J., concurring in part; HOKE, J., concurring in the opinion of ALLEN, J.; CLARK, C. J., dissenting.
Civil action tried upon a waiver of trial by jury. *Page 297 
It appears by the findings of fact that, on 20 October, 1913, the R. J. Reynolds Tobacco Company, as consignor, at the request of the plaintiff, delivered to the Southern Railway Company, at Winston, N.C. twenty caddies of tobacco and received from it for transportation and delivery to Farmers Furnishing Company at Raeford, N.C. a bill of lading, describing the tobacco company as consignor, by which the railway company agreed to ship the tobacco to the Farmers Furnishing Company, as consignee, at Raeford, N.C. the freight being prepaid. Ten of the caddies were safely delivered in sound condition, and the ten others were lost by the Southern Railway Company while they were in its possession. It is stated in the case, as one of the facts found by the judge, "that the said Farmers Furnishing Company charged the value of the lost caddies of tobacco, to wit, $34, to the plaintiff, Hamlet Grocery Company, from whom it had purchased the same, and transferred and released to the plaintiff its claim for the loss"; but it does not appear when this was done. On 9 December, 1913, plaintiff filed a written claim for said loss with the agent of the Aberdeen and Rockfish Railroad Company at Raeford, N.C. which consisted of certain papers, to wit, bill of lading and a written statement not verified, of the account, charging said A. R. R. Company with the value of the ten boxes of tobacco which were lost, or $34, and which further stated that they had been shipped by the Reynolds Tobacco Company for plaintiff's account to the Farmers Furnishing Company, were lost and the claim for their value transferred by the Farmers Furnishing Company to plaintiff by release. No claim was filed with the (242) defendant's agent at the point where the goods were delivered by it, or its agent, to the next common carrier in the course of transportation, nor does it appear that, at the time the claim was filed with the agent of the A. R. R. Company at Raeford, N.C. the defendant, or said A. 
R. R. Company, or any of the carriers, in the connecting line, or their agents, had knowledge of any transfer of its claim for damages by the Farmers Furnishing Company to the plaintiff, except only information given by the claim itself. The part of the statute relevant to this case is as follows:
"Every claim for loss of or damage to property while in possession of a common carrier shall be adjusted and paid within ninety days in case of shipments wholly within the State, and within four months in case of shipments from without the State, after the filing of such claim with the agent of such carrier at the point of destination of such shipment, or point of delivery to another common carrier, by the consignee, or at the point of origin by the consignor, when it shall appear that the consignor was the owner of the shipment: Provided, that no such claim shall be filed until after the arrival of the shipment, or some part *Page 298 
thereof, at the point of destination, or until after the lapse of a reasonable time for the arrival thereof. In every case such common carrier shall be liable for the amount of such loss or damage, together with interest thereon from the date of the filing of the claim therefor until the payment thereof."
The statute then imposes a penalty of fifty dollars for failure to adjust the claim within said period of time, "to be recovered by any consignee aggrieved (or the consignor, when it shall appear that the consignor was the owner of the property at the time of shipment and at the time of suit, and is therefore the party aggrieved)."
It was agreed that the defendant formally tendered the $34, interest and costs, before the trial, and that said tender was rejected.
The court gave judgment for the claim, $34, the penalty, $50, and the costs. Defendant appealed.
After stating the case: We will consider the case upon three questions:
First. Plaintiff was not the consignee named in the bill of lading, which contains the full contract with the carrier for the transportation and delivery of the tobacco. In the first place it is stated in the case that he had sold the goods to the Farmers Furnishing Company, (243) and therefore the property in them passed at once to it. Secondly, the latter company was the consignee, according to the contract of shipment, and was so designated in the bill of lading. When the goods were lost and it transferred its claim to plaintiff, the property in the goods did not pass and plaintiff did not thereby become consignee, but only acquired the right to sue for the damages, or the value of the goods. Neither the Farmers Furnishing Company nor the plaintiff, nor both of them, had the right to change the contract of shipment, or the relation of the parties thereto, by making the plaintiff the consignee against the will or without the consent of the defendant as carrier. The plaintiff, by the transfer to him by the Farmers Furnishing Company, acquired a chose in action, or the right to recover the value of the goods as damages for a breach of the contract, as upon a conversion of them, and in no sense did he become consignee. Nor can the plaintiff recover as consignor. By selling the goods to the plaintiff, and also by having them shipped by the Reynolds Tobacco Company on an open bill of lading to the Farmers Furnishing Company, the absolute property in the goods passed to the latter and plaintiff retained no interest, legal or *Page 299 
beneficial, in the goods. His only claim was for the price thereof, and he has not since acquired any interest in the goods as consignor, no more than he has as consignee, as we have shown, because the transfer to him was only for the value of the goods or damages, due to the Farmers Furnishing Company for their loss, that is, he got an open account for a sum of money due to it, and nothing more.
Second. If he had been consignor or consignee, he has not presented his claim as required by the statute, which requires that it shall be filed with the agent of the company that lost the goods; if it is the last carrier in the course of the shipment, then with his agent at the point of destination," and if an intermediate carrier, then with his agent at the point of his delivery to another carrier, or at the point of origin by the consignor, if he has retained the ownership of the goods. The claim was filed with the agent of the A. R. R. Company at Raeford, N.C. the point of destination, but that company did not lose the goods, as the case states, but the defendant company. Nor is the A. R. R. Company sued in this action. It was not filed with defendant's agent at the point where it delivered the goods to the next carrier in the route, nor was it filed by the consignor "at the point of origin," even if he had any right to file it at all, and certainly he did not have this right as consignor. It is familiar learning that penal statutes must be strictly construed, and the plaintiff, before he is entitled to recover the penalty, must bring his case strictly within the language and meaning of the statute. They must be construed sensibly, as all other instruments, but not liberally, so as to stretch their meaning beyond what the words will warrant. 36 Cyc., 1185, 1186, 1187; Sears v. Whitaker, 136 N.C. 37. The Court, in Alexander v. R. R., 144 N.C. 93, 99, (244) discussing a statute of the same kind as the one under consideration, said: "Applying the rule by which the courts should be guided in the construction of a penal statute, Bynum, J., in Coble v. Shoffner, 75 N.C. 42, says: `It cannot be construed by implication, or otherwise than by express letter. It cannot be extended, by even an equitable construction, beyond the plain import of its language. If, therefore, even the intent of the Legislature to embrace such a case was clear to the Court from the statute itself, we cannot so extend the act, because such a construction is beyond the plain import of the language used.' It is said that we should see in the statute the evil intended to be remedied, and so construe it that such evil may be repressed and the remedy advanced. This is undoubtedly the general rule in the construction of statutes. This suggestion has been heretofore made and disposed of by the same learned judge. `In construing a penal statute, we are not allowed, as in the case of those which are not penal, to look at the motives or the mischief which was in the legislative mind. The rule is peremptory that the case must *Page 300 
fall within the plain language of a penal statute before the penalty can attach.' Ib., 44. As was said by Mr. Justice Ashe in Whitehead v. R. R.,87 N.C. 255: `The rigid rules of the common law with reference to the liability of common carriers should not be applied to a case involving the violation of a penal statute.' Such has been the uniform rule of construction from the earliest times."
And in Cox v. R. R., 148 N.C. 459, 460, the Court said, in discussing the same subject: "It is a well-established principle of law, applicable to corporations and individuals alike, that penal statutes are strictly construed, and that he who sues to recover a penalty awarded by the law must bring his case clearly within the language and meaning of the law.Sears v. Whitaker, 136 N.C. 37; Appenheimer v. R. R., 64 Ark. 27; 26 Am. and Eng. Enc. (2 Ed.), p. 658." So we see that, by this ancient rule of the law, which has ever been approved and sanctioned by the courts, even to the present time, as one that is reasonable and just, we must hold the plaintiff to the strictest construction, and not broaden the meaning of the statute in his favor to include a case not within the words and, therefore, not within its intention. It seems that he has failed, at every point, to show his right to the penalty he now claims. It is not necessary to decide whether a penalty, such as this one is, can be assigned, for it has not been transferred, but only the debt, using that word in its general and comprehensive sense as meaning a sum of money due from one to another without regard to the form of the obligation or the manner in which it accrued.
Third. It appears that plaintiff, if he had any cause of action, has not filed his claim in due and proper form. The defendant, as carrier, was not bound to pay a claim to anybody who might present it, (245) but only to the consignor or consignee named in the bill of lading or if his claim for damages had been assigned, then there must be some reasonably satisfactory evidence of the assignment before he would be bound to pay, otherwise the carrier might be subjected to a double or even a greater liability. The ownership of the claim by the one who files it should be authenticated in some way. His mere assertion of ownership will not do. The carrier must make a true delivery, for, like any other bailee, he will act at his peril if he delivers to any one but him who is entitled to receive the goods, and he is, therefore, entitled to evidence that the demand upon him is rightful. Here the bill of lading was not produced duly endorsed to plaintiff, or any other reliable evidence of his right to claim the damages tendered. The defendant was consequently in the exercise of its right when it refused to pay. 6 Cyc., 470, 471, 472. In this case, so far as the record shows, and the bill of lading, the consignee, Farmers Furnishing Company, *Page 301 
was the only one entitled to receive the goods or to recover for their loss, as there was no legal evidence to the contrary.
It is suggested that defendant admitted the claim for damages, and therefore the right to recover the penalty followed as an incident. But this is not a logical, legal or just conclusion. The recovery of the claim for damages rests upon principles far different from those which entitle plaintiff to the penalty. The latter is governed by the provisions of the statute, and the former by the rules of the common law. It is admitted that the alleged right to the penalty was not assigned, and plaintiff does not sue as assignee, but as the "real consignor," and as (therefore) the party aggrieved who is entitled to recover the penalty. But if he is the consignor, it was a condition precedent to his right to recover the penalty that he should have filed his claim at the place where the shipment originated, for the statute so provides. But the plaintiff was not thenominal or real consignor, who was the shipper, and, besides, as the goods were shipped on an open bill of lading the title passed, at once, on receipt of the goods by the carrier, to the consignee, and the consignor, even Reynolds Co., lost all interest in them, as much so as if they had sold and actually delivered them to the consignee, the Farmers Furnishing Company at Raeford, N.C. It is not a fact which appears in the record, nor is it true according to plaintiff's own showing, that the latter company gave to the plaintiff a statement of the consignee, which was attached to the claim of loss filed with the railroad company (not this defendant) at Raeford, showing that the plaintiff alone, by assignment, was interested in the loss, even if this would have availed the plaintiff so as to entitle it to recover the penalty.
The claim for damages contained only plaintiff's own statement of certain matters upon which defendant, if the claim had been filed with it, was not bound to rely, or to accept as true. It is further (246) contended that defendant should have objected, when the claim was filed at Raeford, that it was not done at Winston, the place from which the shipment started, the answer to which is conclusive, that there is only one carrier sued, the Southern Railway Company, and it was not at Raeford to object when the claim was filed and it may be added that the claim never was filed with this defendant, as the statute provided that it should be. It was not required of this defendant to state the grounds of objection to a recovery of the penalty, when the claim for damages was filed with another company, or even if it had been properly filed with it. It denied the plaintiff's right to recover the penalty, and it was then incumbent on the plaintiff to show that the penalty had accrued to it in the manner provided by the statute, which requires that a precise demand shall be made, in a specified way, and at the proper place, before any penalty shall be recovered. As the goods were lost on the line *Page 302 
of defendant (Southern Railway Company), the claim and demand should have been made on it at the point where it delivered the goods to the next carrier in the line of transit. And this was not done, and nothing like it was done. This defendant never agreed to pay the claim for damages before this suit was brought, but after the case had passed from the court of the justice of the peace it agreed, in order to save costs, that judgment might be entered for the damages, as it would be ultimately liable for them, but it never waived anything in in respect to plaintiff's right to recover a penalty. It is not true, according to the record, in law or in fact, that R. J. Reynolds Co. had no interest in the shipment, and that the consignee at Raeford had none. As we have shown beyond any cavil of doubt, the Farmers Furnishing Company, the consignee at Raeford, had the entire interest in the goods when they were delivered to the carrier at Winston upon an open bill of lading. Buggy Corp. v. R. R., 152 N.C. 119; Gaskinsv. R. R., 151 N.C. 18; Stone v. R. R., 144 N.C. 220; Hunter v.Randolph, 128 N.C. 91.
Justice Hoke made this plain in Buggy Corporation v. R. R., supra, citing some of the above cases, when he said: "The principle indicated has of late been more frequently recognized and applied with us in actions against common carriers under the penalty statutes of the State in defining who is the `party aggrieved,' designated in most of them as the person who may bring the suit, as in Stone v. R. R., 144 N.C. 220, but they are made to rest on the principle that where a vendor ships goods to a purchaser by a common carrier whose lines afford the usual route and ordinary method of shipment, and on a bill of lading of the kind described, the carrier is considered the agent of the vendee, and on delivery to such carrier the title passes to such vendee, and thereafter, nothing else appearing, he is the real party interested in the (247) proper performance of the contract. Hunter v. Randolph, 128 N.C. 91. And in Gaskins v. R. R., 151 N.C. 18, the doctrine was applied to a case directly involving the right of a consignor to maintain a suit for damages, when it appeared, without more, that the goods had been shipped to a purchaser on an open bill of lading and it was held that the action would not lie."
There is not the slightest evidence in this record that the plaintiff, as the seller of the goods, retained any interest whatever in them, but the entire property in them passed to the consignee, leaving to it only a cause of action for the price. The buyer (consignee) had no legal right to charge the goods back to the seller without his consent, as the latter had sold and delivered them to the carrier, and even with it he could not be made consignee, or restored to the position of consignor, *Page 303 
if he ever held that relation to the shipment. There is no such alchemy known to the law.
We need not discuss the question as to the assignment of the penalty, as it was never assigned, as a fact, and besides if a penalty is generally assignable, this consignee could not assign the one claimed by the plaintiff, as it never had any right to it, not having complied with the law which imposed it.
This case is not like Horton v. R. R., post, 383, for there the nominal consignee was the agent of his wife, the real owner, and therefore the "consignee aggrieved," within the words and meaning of the statute, and entitled to receive the goods and sue for the damage to them, as they had been injured. We applied there the law of agency, and, as the plaintiff was acting through another as agent, it was the same as if she had been personally present and acting herself and in her own name (Qui facit peralium, facit per se). But here the Farmers Furnishing Company was not agent for plaintiff, but was nominally the consignee and really so, as it was acting for itself, being both legal and beneficial owner of the goods.
The judgment is reversed as to the penalty, and judgment will be entered in the court below in favor of plaintiff for $34, with interest and costs to the date of the tender admitted.
Reversed.