W. G. DELLINGER v. W. A. GILLESPIE.

*Contract—Parol Evidence of Contemporaneous Agreement to Change Written Contract—Mistake—Fraud—Deceit—Waiver.*

1. Parol evidence will not be admitted to prove a contract entirely different from that embraced in a writing, except for fraud, mutual mistake, &c.

2. The negligence of a party to a written contract in voluntarily signing, without reading, a contract, no deceit or fraud being shown, will not permit him to contradict its terms by parol evidence.

3. Where, in the trial of an action for the contract price for the erection of lightning rods upon defendant's house, defendant claimed that his signature to the written contract was procured by fraud, and that the writing did not express the correct terms of the agreement, but it appeared, in evidence, that before the work was commenced defendant read the contract, stated it was not correct, but did not stop the workmen from doing the work or express an intention to sue the plaintiff in damages for the alleged deceit; *Held*, that, if there was fraud, the defendant waived it, and equity will not permit him to accept the work and refuse to pay for it.

CIVIL ACTION, tried before *Bryan, J.*, at January Term, 1896, of MECKLENBURG Superior Court, on appeal from a judgment of a justice of the peace. The contract sued on was as follows :

"ORDER FOR THE ERECTION OF CONDUCTORS.

" MR. U. G. DELLINGER :

Sir :—Erect (or deliver) at your earliest convenience on my residence a system of circuit conductors, (5 points and 3 rods to the ground,) of the Star Lightning Rod, in a proper and substantial manner, in accordance with scien-

118—47

tific rules; and I will pay for the same on completion of work in cash or note, due on completion at the rate of 47½ cents per foot for the rod, $3.50 for each point, and price of five feet of rod for each galvanized brace; $5 for each horse, rooster or points of compass; $4 for each arrow and $3 for each ball.

" It is expressly understood by the signer of this order that he signs the same upon his own judgment, after due deliberation by him, without any undue influence having been used or representations made by any agent other than written or printed on this order.

" Dated July 10, 1895.

" (Signed) W. A. GILLESPIE."

There was a verdict for the plaintiff and from the judgment thereon the defendant appealed.

*Messrs. McCall & Nixon,* for plaintiff (appellant).
*Messrs. C. Dowd* and *Jones & Tillett,* contra.

MONTGOMERY, J. : The defendant executed the order to the plaintiff which is set out in the case on appeal. The order was signed by the defendant simultaneously with the making of the contract, whatever the contract was. The defendant could read and write, and he signed the paper, according to his own testimony, voluntarily. The plaintiff made no attempt to conceal any of its provisions, handed it to him to read, practiced no trick or surprise on him to induce him to execute it, and as a matter of fact the defendant commenced to read it. He said, as a witness for himself on the trial, that " he (plaintiff) pulled out the paper and showed it to me............ Then I signed the paper. I didn't hardly get the first line. I saw the figure 3 and thought it was 3 rods for the house. I asked if he would put it up to-day, and he said he would put it

np to-morrow." It is plain that no deceit was practiced here. It was pure negligence in the defendant not to have read the contract. There it was before him, and there was no trick or device resorted to by the plaintiff to keep him from reading it. In *Boyden* v. *Clark*, 109 N. C., 669, it is said by the Court, " If a prudent person, in the exercise of ordinary care and occupying his position, would, by prosecuting his inquiries further or extending his investigations, have ascertained the truth before acting, relief would be refused on the ground of negligence." If we will apply this principle to the case before us we will see that the defendant's negligence was inexcusable. The defendant's defense is that the plaintiff told him, just upon signing the paper, that he would put up the rods for $20, and he was allowed on the trial to testify to this conversation to show what the contract was. This testimony was nothing but an attempt to contradict a written instrument executed by the defendant concerning the same matter. It was an attempt to prove by oral testimony a contract entirely different from that embraced in the written one. His Honor erred in admitting the testimony. But, for another reason, the defendant cannot defeat the plaintiff's action. According to his own testimony, when the workman Uzzell came next morning to put up the rods the defendant asked to see the paper which he had signed. (Uzzle having it in his hand to collect the money after the work should be done) and upon looking at it said that the contract was not stated truly in the paper. Yet he allowed the work to go on and to be completed in manner and style altogether different from that which he said the true contract provided for. Upon discovering that the written contract was unlike the contract which he alleged he had made with the plaintiff, he should not have allowed the work to go on. Equity will not permit him under

such circumstances, even if there was fraud in the contract, to allow the plaintiff to complete the work and then refuse to pay for it. If the contract had been procured through fraud, as the defendant alleged, he ought, when he had examined it the next morning before Uzzell began the work, to have repudiated it and have forbidden the commencement of the work, or he should have made his election to abide by it, as it was written, with the explicit declaration, then made, of his intention to sue the plaintiff in damages for the deceit. *Knight* v. *Houghtalling*, 85 N. C., 19. It is not necessary for us to consider whether or not the answer, even after amendment, was sufficient in substance to raise the question of deceit in the contract. There was no error in the matters pointed out for which there must be a new trial.

                                    New Trial.